# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**JEANNE HARRISON,**

    **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　　　　　　　**CIV No. 94-691 JP/WWD**

**EDDY POTASH, INC., a New Mexico**
**Corporation, and ROBERT L. BROWN,**

    **Defendants.**

### MEMORANDUM OPINION

On February 25, 1999, Plaintiff filed "Plaintiff Jeanne Harrison's Motion for Partial Summary Judgment: Sexual Harassment," (Doc. No. 119). At a May 25, 1999, pretrial conference, I granted Plaintiff's motion in part and deferred ruling on the remainder of the motion until the parties had submitted proposed jury instructions regarding the claim of sexual harassment. After a thorough review of the briefs, the facts, the pleadings, the proposed jury instructions, and the applicable law, I conclude that remainder of Plaintiff's motion should be granted.

I.      BACKGROUND

   A.      **Factual History**

Plaintiff Jeanne Harrison ("Harrison") began working for Eddy Potash, Inc. ("EPI") as an underground potash miner in May 1992.[1]  Defendant Robert L. Brown ("Brown"), an underground shift foreman, supervised Harrison.  On several occasions during May and June of 1992, Brown took Harrison to remote areas of the mine.  At various times during these incidents, Brown made sexually suggestive comments, attempted to kiss Harrison, tried to put his hands on her breasts and between her legs, attempted to unzip her pants, exposed himself, and put Harrison's hand on his penis and ejaculated.  Harrison claims she repeatedly refused Brown's advances and invitations to have sex.  At the first trial in this case, Brown did not dispute that the sexual encounters occurred, but he claimed they were consensual.

 Eventually, Harrison stopped coming to work and informed a manager in the safety office of what had transpired with Brown.  The manager reported this information to Ken Levio, the human resources manager, who reprimanded Brown.  Although Harrison remained on the payroll for another year, she never returned to work.

EPI contends that it had an official policy against sexual harassment which was posted in the mine and provided to Harrison when she began working.  Harrison denies that the policy was widely posted or that she received a copy of it when her employment commenced.

---

[1] Because the factual history of this case is thoroughly discussed in *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437 (10th Cir. 1997), *cert. granted*, *judgment vacated by* 118 S.Ct. 2364 (1998), it is only briefly recited here.

### B. Procedural History

Harrison brought this action under Title VII of the Civil Rights Act of 1964, alleging hostile work environment sexual harassment and various pendent state law claims against Brown and EPI. A jury returned a verdict in Harrison's favor on her claims against Brown for intentional infliction of emotional distress and battery but in EPI's favor on Harrison's Title VII claim of sexual harassment. Harrison appealed the jury's adverse verdict on her Title VII claim and EPI filed a cross-appeal claiming that the district court lacked jurisdiction to entertain the Title VII claim because Harrison had failed to comply with grievance procedures set forth in her union's collective bargaining agreement. The Tenth Circuit rejected EPI's cross-appeal and concluded that the district court had failed to properly instruct the jury regarding EPI's Title VII liability. *See Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437 (10th Cir. 1997) (*Harrison I*), *cert. granted and judgment vacated*, 118 S.Ct. 2364 (1998). After the Tenth Circuit reversed and remanded the case to the district court, EPI filed a petition for writ of certiorari with the Supreme Court. The Supreme Court granted the petition, vacated the Tenth Circuit's opinion, and remanded to the Tenth Circuit for further consideration in light of *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998). *See Harrison v. Eddy Potash, Inc.*, *cert. granted and judgment vacated*, 118 S.Ct. 2364 (1998).

On remand, the Tenth Circuit considered whether the district court had erred by failing to properly instruct the jury on EPI's liability under Title VII. *See Harrison v. Eddy Potash, Inc.*, 158 F.3d 1371 (10th Cir. 1998) (*Harrison II*). The Tenth Circuit specifically addressed Harrison's assertion that "the district court erred by failing to properly instruct the jury on three theories of vicarious employer liability: (1) liability resulting from Brown's high degree of

managerial control over her; (2) liability resulting from Brown's apparent authority to commit the sexual harassment; and (3) liability resulting from Brown's misuse of actual supervisory authority." *Id*. at 1376. The Tenth Circuit concluded that the district court properly refrained from instructing the jury on the first two theories of vicarious liability, but that the district court had erred in failing to instruct the jury on EPI's liability arising from Brown's misuse of actual supervisory authority. *See id*. at 1377 ("[T]he evidence presented at trial clearly indicated Brown had actual and immediate supervisory authority over Harrison and misused that authority to sexually harass her.").

The Tenth Circuit also considered EPI's argument that it was entitled to judgment as a matter of law under the affirmative defenses established in *Faragher* and *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998). EPI argued that the evidence at trial had shown that "Brown took no tangible employment action against Harrison, Eddy Potash exercised reasonable care in preventing and promptly correcting any sexual harassment in the workplace, and Harrison unreasonably failed to take advantage of corrective opportunities provided to her by Eddy Potash." *Harrison II*, 158 F.3d at 1377. The Tenth Circuit disagreed. Although the court found that Brown had not taken any tangible employment action against Harrison, the Tenth Circuit stated, "the evidence presented appears to pose serious questions concerning the reasonableness of Eddy Potash's conduct in preventing sexual harassment in the workplace." *Id*. (citing *Harrison I*, 112 F.3d at 1442). The Tenth Circuit reversed the jury verdict in favor of Eddy Potash and against Harrison on her Title VII claim and remanded the case to this court for further proceedings. *Id*.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id*.

## III. DISCUSSION

### A. Title VII Sexual Harassment

Under Title VII, an employer is forbidden from discriminating "against any individual with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "This prohibition proscribes sexual harassment in the workplace." *Smith v. Norwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997). Here, Harrison has alleged a hostile work environment claim, not a *quid pro quo* claim of sexual harassment. "[I]n order to prevail on a hostile work environment sexual harassment claim, [plaintiff] is required to show that the unwelcome, sexually-oriented conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Sprague v. Thorn Americas, Inc.*, 129 F. 3d 1355, 1365 (10th Cir. 1997); *see*

*Meritor Savings Bank v. Vison*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986) (stating that sexual harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment'" to be actionable) (citation omitted); *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir.), *cert. denied*, 118 S.Ct. 342 (1997) (to establish a case of sexual harassment, a plaintiff must show that she is a member of a protected group who was subject to unwelcome harassment based on sex that altered a term, condition, or privilege of her employment and created an abusive working environment); 29 C.F.R. § 1604.11(a) ("Unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.").

The plaintiff must also show that the conduct was severe or pervasive enough to create both "an objectively hostile or abusive work environment" and an environment that the employee subjectively perceived as abusive. *Harris v. Forklift Systems, Inc.*, 510 U. S. 17, 21-22, 114 S. Ct. 367, 370-71 (1993); *Smith*, 129 F.3d at 1413. To determine whether an environment is "hostile" or "abusive," the court looks to the totality of the circumstances. *Id.*; *Sprague*, 129 F.3d at 1365. These circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. at 371.

An employer is negligent and can be held directly liable for sexual harassment if the employer "knew or should have known about the conduct and failed to stop it." *Burlington*, 118

S.C.t at 2267. In *Harrison II*, the Tenth Circuit summarized the situations, described by the Tenth Circuit in *Burlington*, when an employer can be subject to vicarious liability for a supervisor's harassment:

> (1) under the rare circumstances where "a supervisor engages in unlawful discrimination with the purpose, mistaken or otherwise, to serve the employer," [*Burlington*] at ----, 118 S.Ct. at 2266, (2) "where the agent's high rank in the company makes him or her the employer's alter ego," *id*. at ----, 118 S.Ct. at 2267, (3) "in the unusual case" where "there is a false impression that the [harassing employee] was a supervisor, when he in fact was not," and "the victim's mistaken conclusion" regarding the harassing employee's position was reasonable, *id*. at ----, 118 S.Ct. at 2268, or (4) in circumstances where a supervisor has misused his or her delegated authority in perpetrating the harassment.

*Harrison II*, 158 F.3d at 1375 (citing *Burlington*).

In *Burlington* and *Faragher*, the Supreme Court harmonized its ruling that an employer can be held vicariously liable for a supervisor's misuse of actual authority with the Supreme Court's previous holding in *Meritor* that an employer is not automatically liable for a supervisor's harassment. To do this, the Supreme Court established an affirmative defense for employers. *See Faragher*, 118 S.Ct. at 2291. The Supreme Court held that where an employer is subject to vicarious liability for a supervisor's misuse of authority over an employee, and no tangible employment action was taken against the employee, the employer could escape liability by establishing by a preponderance of the evidence that: 1.) it "had exercised reasonable care to avoid harassment and to eliminate it when it might occur" and 2.) "that the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *Faragher*, 118 S.Ct. at 2292;

*Burlington*, 118 S.Ct. at 2270.

## B. Harrison's Motion for Summary Judgment

Harrison requests partial summary judgment against EPI on her sexual harassment claim and asserts that the only issue left for the jury's determination is whether EPI is vicariously liable for Brown's sexual harassment of Harrison despite the affirmative defenses of *Burlington* and *Faragher*. Harrison argues that the sexual harassment claim was already fully litigated and decided adversely to EPI by the jury's verdict in favor of Harrison on her battery and intentional infliction of emotion distress claims against Brown. At the very least, Harrison asserts, partial summary judgment should be entered in her favor on the unwelcomeness element of her sexual harassment claim.

In its Response, EPI asserts that collateral estoppel dictates the opposite result because this issue was already fully litigated and decided adversely to Harrison when the jury returned a verdict rejecting her Title VII sexual harassment claim against EPI. Also, although the jury found in favor of Harrison on her battery claim, EPI argues that Harrison must still establish a case of sexual harassment against EPI.

Because this issue arises on remand from the Tenth Circuit, rather than in a separate lawsuit, collateral estoppel does not actually apply. Instead, the question is "does a genuine issue of material fact exist regarding whether Brown's conduct created a hostile work environment within the meaning of Title VII?" This issue obviously must be determined in light of the jury's verdict in favor of Harrison on her battery and intentional infliction of emotional distress claims, which have not been appealed and are now the law of the case.

Because Harrison is a woman, she is a member of a protected class. *See Seymore*, 111

F.3d at 797 (plaintiff must be member of protected class to prevail under Title VII). Also, EPI conceded at the May 25, 1999, pretrial conference and motion hearing that the only physical contact between Brown and Harrison was of a sexual nature, so there is no genuine issue of material fact regarding the requirement that the conduct be sexually orientated. *See Sprague*, 129 F.3d at 1365 (plaintiff must show that conduct was sexually orientated to establish sexual harassment). Instead, the issues to be decided are whether there is a genuine issue of material fact regarding the "unwelcome" element of Harrison's hostile work environment claim, and whether Brown's conduct was sufficiently severe or pervasive as to alter the conditions of Harrison's employment and create an abusive working environment under both an objective and subjective standard.[2]

These are difficult questions that appear to be issues of first impression in the Tenth Circuit. After an assiduous examination of the jury instructions, jury verdict, trial transcript, and applicable law, I conclude that there is no genuine issue of material fact regarding Harrison's claim that Brown's conduct created a hostile work environment. Therefore, the only issue that will be presented to a jury in the next trial is whether the affirmative defense set forth in *Faragher* and *Burlington* insulates EPI from liability for Brown's conduct.

    *1.*    *The jury instructions and jury verdict*

In the trial, the district court judge gave the following jury instructions regarding Harrison's claim of intentional infliction of emotional distress against Brown:

---

[2] Harrison's sexual harassment claim is predicated solely on the conduct of Brown.

ESSENTIAL ELEMENTS

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

For Plaintiff Jeanne Harrison to recover on her claim for intentional infliction of emotional distress against Robert Brown, plaintiff must prove each of the following essential elements by a preponderance of the evidence.

> FIRST: That the conduct of the defendant Robert Brown was extreme and outrageous under the circumstances;
>
> SECOND: That the defendant Robert Brown acted intentionally or recklessly; and
>
> THIRD: As a result of the conduct of Robert Brown, plaintiff Jeanne Brown experienced severe emotional distress.

Regarding Harrison's claim of battery against Brown, the district court instructed the jury:

ESSENTIAL ELEMENTS

BATTERY

For the plaintiff Jeanne Harrison to recover on her claim of battery against the defendant Robert Brown, plaintiff must prove each of the following essential elements.

> FIRST: That the defendant Robert Brown intentionally touched or struck the plaintiff;
>
> SECOND: That such contact by the defendant was harmful or offensive; and
>
> THIRD: That the contact was without consent of the plaintiff.

The jury awarded Harrison compensatory damages totaling $102,500 for both claims. The jury also awarded Harrison $20,000 in punitive damages for each claim, for a total of $40,000 in punitive damages.

### 2. Brown's Sexual Advances were Unwelcome

"The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor*, 477 U.S. at 68 (quoting 29 C.F.R. § 1604.11(a) (1985)). In *Meritor*, the Supreme Court decided that a plaintiff's voluntary participation in sexual encounters does not foreclose a finding that the sexual conduct was unwelcome. *Id*. The Court went on to state, "[t]he correct inquiry [for determining whether conduct was unwelcome] is whether respondent by her conduct indicated that the alleged sexual advances were unwelcome, not whether her actual participation in sexual intercourse was voluntary." *Id*.

Here, the jury's verdict on the claims of battery and intentional infliction of emotional distress establish that Brown intentionally touched or struck Harrison without her consent, that the contact was harmful or offensive to Harrison, that Brown's conduct was extreme and outrageous, that Brown acted intentionally and recklessly, and that Brown's conduct caused Harrison severe emotional distress. Because the jury awarded punitive damages for both the intentional infliction of emotional distress claim and the battery claim, the jury necessarily determined that Brown was "malicious, willful, reckless, wanton or grossly negligent." (Jury Instructions at 51.)

Based on the jury's finding, it is clear that Brown's sexual advances were "unwelcome." Although EPI urges that under the *Meritor* language the jury's verdict does not resolve the question of whether Harrison's conduct indicated to Brown that his conduct was unwelcome, I disagree. First, *Meritor* did not address the specific issue presented here. Second, the unique facts of this case, as discussed below, dictate my conclusion that as a matter of law Brown's conduct was "unwelcome."

The jury's verdict and assessment of punitive and compensatory damages clearly shows that the jury rejected Brown's version of events.[3] Although it is possible that the jury believed that some of the sexual encounters were consensual or welcome, the jury's verdict in favor of Harrison and against Brown on the battery and intentional infliction of emotional distress claims establishes that the jury believed Harrison's version of events regarding at least one significant, egregious sexual encounter. Because Harrison repeatedly testified that she communicated to Brown that his sexual advances were unwelcome,[4] and because the jury found that on at least one occasion Brown touched Harrison in a sexual manner, that his conduct was harmful or offensive, that Harrison did not consent to it, that Brown's conduct was outrageous and extreme, that Brown acted recklessly or intentionally, and that his conduct caused Harrison severe emotional distress, I conclude that Harrison has established that there is no genuine issue of material fact regarding the "unwelcome" prong of her claim that Brown's conduct created a hostile work environment.

> 3. *Brown's conduct was sufficiently severe or pervasive to alter the conditions of Harrison's employment and create an abusive working environment*

"The *Meritor* test is a disjunctive one, requiring that the harassing conduct be sufficiently pervasive *or* sufficiently severe to alter the terms, conditions, or privileges of Plaintiff's

---

[3] Although Brown did not deny that the sexual encounters occurred, he claimed that they were consensual. Brown testified that Harrison solicited the sexual conduct by flirting with Brown, Feb. 2, 1996, Tr. at 53, and calling him on one occasion to say she wanted sex, *id.* at 43. Brown also testified that, with one exception, Harrison never indicated that she did not want to participate in the sexual activity with Brown. (*Id*. at 52.) The only time Harrison said "no," she and Brown did not have sexual activity. (*Id*. at 42.)

[4] *See, e.g.* Feb. 1, 1996, Tr. at 24, (told Brown "no" and pushed him away), at 29 (told Brown "no"), at 41 (told Brown "no"), at 48 (told Brown "no" to oral sex).

employment." *Smith*, 129 F.3d at 1413 (emphasis in original). To prevail on her sexual harassment claim, Harrison must also show that the conduct was severe or pervasive enough to create both "an objectively hostile or abusive work environment" and an environment that the employee subjectively perceived as abusive. *Harris*, 510 U.S. at 21-22, 114 S. Ct. at 370-71.

Harrison has satisfied the subjective requirement as a matter of law because she believed that Brown's conduct was so severe it created an abusive or hostile work environment. Harrison testified that none of the sexual conduct was mutual, that she considered it a problem, and that she was afraid she would lose her job if she told anyone about it. (Feb. 1, 1996, Tr. at 43.) Eventually, Harrison took vacation time and called in sick to avoid Brown's conduct. (*Id.* at 29.) Harrison also testified that her encounters with Brown were "devastating," that she became "severely depressed," that she suffered from insomnia and diarrhea, that she gained weight and suffered from a panic disorder. (*Id.* at 53-54.) In Harrison's mind, then, Brown's conduct created a work environment so hostile and abusive that she no longer felt able, or willing, to work. This establishes that Harrison subjectively perceived her work environment as hostile and abusive. *See Smith*, 129 F.3d at 1408 (finding that the district court did not err in concluding that plaintiff satisfied the subjective element when she testified that felt humiliated and upset by her supervisor's statements and that she found the work environment hostile and was unhappy there).

As a matter of law, Brown's conduct was also sufficiently severe or pervasive to create an

objectively hostile or abusive work environment under the totality of the circumstances.[5] It cannot seriously be disputed that Brown's sexual battery of Harrison, which the jury found to have caused Harrison severe emotional distress, is "sufficiently severe that a reasonable person would find the work environment hostile or abusive." *Smith*, 129 F.3d at 1413. To be forced to accompany a supervisor to a deserted part of an underground mine and endure a sexual battery is conduct so severe that any reasonable person would find the work environment hostile and abusive. Brown's conduct did not consist "of a mere offensive utterance." *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. Instead, it was severe conduct that was physically threatening and humiliating. *See id*. Brown's conduct also interfered with Harrison's work performance by, at the very least, taking her away from her job duties. *See id*. Thus, even if only one of the several sexual encounters that occurred actually constituted a sexual battery--and the jury's verdict determined that at least one of them did--the circumstances under which it occurred are so egregious that any reasonable person would find the environment abusive.

---

[5] Since the jury's verdict did not definitively determine that all of the sexual encounters were non-consensual, as discussed *supra*, this ambiguity might preclude a finding that Brown's conduct was sufficiently *pervasive* to create a hostile work environment. However, because the *Meritor* test is disjunctive, I need only conclude that Brown's conduct was sufficiently *severe* to create a hostile or abusive work environment. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062,1072 (10th Cir. 1998) ("We therefore disagree with defendants' assertions that a single incident of physically threatening conduct can never be sufficient to create an abusive environment.").

I conclude that "Plaintiff Jeanne Harrison's Motion for Partial Summary Judgment: Sexual Harassment," (Doc. No. 119) should be GRANTED.

_____
UNITED STATES DISTRICT JUDGE