# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JEANNE HARRISON,

    Plaintiff,

vs.                                           Civ. No. 94-691     JP/WWD

EDDY POTASH, INC., a New Mexico
Corporation, and ROBERT L. BROWN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On April 13, 2000, Plaintiff filed an application for an award of attorney's fees and expenses (Doc. No.165) in response to the Court's judgment (Doc. No. 160) awarding Plaintiff "allowable costs and reasonable attorney's fees" against Eddy Potash, Inc. (EPI). The award of fees and costs by the Court followed the second jury trial in this case.

The parties now have fully briefed Plaintiff's application. One full cycle of briefing on Plaintiff's application took place in April and May of 2000. *See* Doc. Nos. 165-67, 169, 174-76. Plaintiff has supplemented her application since then to include attorney's fees and expenses incurred during EPI's appeals after the second trial. According to Plaintiff, no additional briefing is necessary to decide the matter. Letter from counsel Floyd D. Wilson to the Ct. of Nov. 29, 2001. EPI has not indicated a desire to supplement the briefing. Letter from the Ct. to all counsel of December 27, 2001 (asking counsel to inform the Court if there was any misunderstanding in the status of the briefing).

Plaintiff's application includes requests for attorney's fees, plus an additional $8,575.38 for expenses not expressly recoverable as costs under D.N.M.LR - Civ. 54.2. A brief summation of the background of the case is required to understand the Court's analysis of attorney's fees and expenses.

*Procedural History*

On June 21, 1994, Plaintiff filed a complaint against her employer, Eddy Potash, Inc. ("EPI"), and her supervisor, Robert L. Brown. Plaintiff's complaint asserted claims against Mr. Brown arising under state common law, and a federal Title VII claim against EPI alleging a hostile work environment. At the initial trial a jury determined that Mr. Brown had sexually battered and intentionally inflicted emotional distress upon Ms. Harrison. The jury awarded Ms. Harrison $102,500 in compensatory damages, *see* Doc. No. 160, plus $40,000 in punitive damages against Mr. Brown, *see* Doc. Nos. 95 & 97. Following the Court's instructions on the law, the jury determined that EPI was not liable under Title VII for the acts of its employee, Mr. Brown.

Both parties appealed. Plaintiff appealed the Court's instructions on EPI's vicarious liability for Mr. Brown's conduct, and EPI cross-appealed the Court's refusal to dismiss Plaintiff's case against EPI for lack of jurisdiction. *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437 (10th Cir. 1997) (*Harrison I*). A panel of the Tenth Circuit affirmed the Court's refusal to dismiss the case against EPI, but reversed the Court's ruling concerning EPI's vicarious liability. *Id.* at 1451, 1454. *Harrison I* discussed at length the standard for imposing vicarious liability on employers, and expanded the scope of an employer's vicarious liability under Title VII using agency

principles outlined in the Restatement (Second) of Agency § 291 (1958). Ultimately, the Court of Appeals in *Harrison I* concluded that the district court failed to instruct the jury correctly as to EPI's vicarious liability, and remanded the case for further proceedings using the broader liability standards articulated in that opinion.

EPI appealed the Tenth Circuit's opinion in *Harrison I* to the Supreme Court. The Supreme Court granted certiorari, and vacated the judgment of *Harrison I*. *Eddy Potash, Inc. v. Harrison*, 524 U.S. 947 (1998). In a three sentence opinion, the Supreme Court ordered the Tenth Circuit to reconsider *Harrison I* in light of the Supreme Court's intervening opinion in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). *Faragher* addressed the appropriate standard for an employer's vicarious liability under Title VII, and articulated for the first time an affirmative defense to vicarious liability under Title VII.

On remand, the Tenth Circuit concluded that *Harrison I* had expanded an employer's vicarious liability beyond the limits imposed by *Faragher*. *Harrison v. Eddy Potash, Inc.*, 158 F.3d 1371, 1376 (10th Cir. 1998) (*Harrison II*). Nonetheless, *Harrison II* affirmed the portion of *Harrison I* that made an employer liable under Title VII if a supervisory employee used his actual supervisory authority to sexually harass an employee, subject to the application of *Faragher's* affirmative defense. *Harrison II*, 158 F.3d at 1377. *Harrison II* declined to rule on EPI's *Faragher* defense, holding that evidence produced during the first trial posed "serious questions concerning the reasonableness of Eddy Potash's conduct in preventing sexual harassment in the workplace." *Id.* The opinion remanded the case to district court so the appropriate standard for an employer's vicarious liability under Title VII, and *Faragher's* affirmative defense could be applied to EPI.

After the case was returned to this Court in the fall of 1998, EPI was allowed to amend its answer (Doc. No. 112) to include the *Faragher* defense. Thereafter a series of dispositive motions addressed whether a Title VII claim existed under the vicarious liability standard set forth in *Harrison II*. In deciding those motions, the Court ruled that EPI was estopped from litigating whether the sexual encounters between Plaintiff and Mr. Brown were consensual. Doc. No. 134. The Court found that the jury verdict against Mr. Brown on Plaintiff's battery charge necessarily included a finding that the sexual encounters between Plaintiff and Mr. Brown were not consensual. Id. at 3. The Court also denied summary judgment on EPI's *Faragher* defense. Id. at 2. The Court reserved ruling on whether Plaintiff should prevail on her Title VII claim as a matter of law until the parties tendered proposed jury instructions on the issue of unwelcome sexual advances under Title VII. Doc. No. 134 at 3.

After the parties tendered jury instructions, the Court granted Plaintiff summary judgment on her Title VII claim. The Court ruled that in addition to being unwelcome, Mr. Brown's sexual advances were sufficiently severe to create an objective and subjective hostile work environment as a matter of law. Doc. No. 140 at 14 n.5. Because Plaintiff and EPI had agreed that the compensatory damages awarded by the jury in February1996 would be the extent of EPI's liability should EPI lose on its *Faragher* defense, Doc. No. 134 at 3 n.1, the only issue left for trial was the validity of EPI's *Faragher* defense. Doc. No. 140 at 8.

In February 2000 a jury determined that EPI failed to prove its *Faragher* defense, and thus, EPI became liable for Mr. Brown's sexual harassment of Plaintiff. Doc. No. 160. After that verdict, EPI filed a motion for judgment as a matter of law, which the Court denied. Doc. No. 178. Once again, EPI appealed to the Tenth Circuit, which affirmed the Court in all respects.

4

*Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014 (10th Cir. 2001) (*Harrison III*). Then EPI filed another petition for a writ of certiorari to the Supreme Court on the issue of employer liability. On November 13, 2001, the Supreme Court denied certiorari, which ended litigation on the merits of Plaintiff's complaint.

### *The Standard for Determining Reasonable Attorney's Fees*

"The general rule under § 1988 is that the prevailing party should ordinarily recover an attorney's fee . . . ." *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) (internal quotations omitted). Once a plaintiff achieves the status of a prevailing party, courts look to the O'Connor factors in *Farrar v. Hobby*, 506 U.S. 103, 116-22 (1992) (O'Connor, J., concurring), to arrive at a reasonable attorney's fee award. *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1230 (10th Cir. 2001).

Although neither party cites to *Farrar v. Hobby*, perhaps because *Farrar* addressed a nominal $1 judgment whereas the judgment here was for $102,500 in compensatory damages, both parties have presented their arguments over attorney's fees using the factors outlined by Justice O'Connor in that case. *Farrar*, 506 U.S. 103, 116-22 (1992) (O'Connor, J., concurring). Given the manner in which the parties have framed their arguments, coupled with the fact that the Court has discretion "to determine what constitutes a reasonable fee given the particular circumstances," *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1233 (10th Cir. 2001), the Court finds that the analytical framework of Justice O'Connor's concurrence in *Farrar* is helpful, if not essential, to resolving the attorney's fee issue here.

Under Justice O'Connor's analysis in *Farrar*, a court considers three elements when determining an attorney's fee award: (1) the "difference between the amount sought and the

amount recovered," (2) the extent to which the plaintiff succeeded on her theory of liability, and (3) "the accomplishment of a public goal other than occupying the time and energy of counsel." *Barber*, 254 F.3d at 1230-31 (internal quotations omitted). Although "all three factors should be given due consideration," they are not equally weighted, and no one factor controls the reasonableness of a fee award. *Id.*, 254 F.3d at 1233.

*Legal Analysis*

EPI's initial argument is that Plaintiff cannot be considered a prevailing party for much of the litigation that took place. In particular, EPI contends that Plaintiff did not prevail against EPI at the first trial or in her opposition to EPI's petition for a writ of certiorari to the Supreme Court in the first round of appeals. Therefore, according to EPI, Plaintiff is not entitled to attorney's fees for litigating those stages of the case. Def.'s Mem. in Supp. at 2-3.

Plaintiff asserts, correctly, that prevailing party status does not depend on the intermediate decisions and judgments made by various courts during the course of litigation, but rather depends on the final outcome of the case. *Hanrahan v. Hampton*, 446 U.S. 754, 758-59 (1980) (per curiam) (holding that a party "prevails" with success on the merits of a claim, and that winning (or losing) procedural or evidentiary rulings or intermediate appellate decisions that "may affect the disposition on the merits" have no bearing on whether a party is a prevailing party); *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 237-238 (5th Cir. 1990) (holding that a prevailing party is entitled to attorney's fees for all appellate work, even for appellate issues that were lost, because the appeal was "an integral stage" of the litigation); *Dougherty v. Barry*, 820 F.Supp. 20, 25 (D.D.C. 1993) (holding that once plaintiffs prevailed on the merits, they were "eligible for the

6

reasonable fees and costs incurred on both the trial and appellate levels, including fees and costs incurred in defending on appeal specific issues which were ultimately decided against them").

Further, Plaintiff points out that the first trial was essential to her success. Plaintiff observes that the first trial had dramatic collateral estoppel effects concerning EPI's ultimate liability. The verdict obtained in the first jury trial established that Mr. Brown's sexual advances were not consensual, which in turn provided an indispensable factual finding for the Court later to determine that Mr. Brown's conduct constituted sexual harassment as a matter of law. The first trial also established the extent of EPI's vicarious liability. Those results, when coupled with preserving the issue for appeal, persuade the Court that the entirety of the litigation between the parties permitted Plaintiff to prevail on the merits of her Title VII claim. Under *Hanrahan* and its progeny Plaintiff should not be denied reasonable attorney's fees for the first trial or for her opposition to the petition for a writ of certiorari simply because she did not triumph over EPI at those stages of the litigation. Because Plaintiff ultimately prevailed on her Title VII claim against EPI, she is entitled to reasonable attorney's fees incurred throughout the litigation.

Having determined that Plaintiff's prevailing party status applies to all of the litigation between the parties for the purpose of calculating attorney's fees, the O'Connor factors come into play. Under the first factor—the difference between the amount sought and the amount recovered—EPI argues that "based upon the Plaintiff's limited monetary recovery . . . the Court should reduce any award of attorney's fees by 50%." Def.'s Mem. in Supp. at 3-4. Defendant does not tell the Court what dollar amount Plaintiff sought on her claim. On the other hand, Plaintiff asserts that the amount she recovered against EPI, $102,500, was more than double the highest settlement offer made to her, which was less than $40,000. Pl.'s Mem. in Supp. at 7; Aff.

of Floyd Wilson at ¶ 13.  Although Plaintiff failed to secure a larger jury verdict, she did obtain a substantial award, more than she would have ever received by settling the case.  Under the circumstances here, the Court considers the first factor to be a neutral component in the calculation of attorney's fees.

The second factor—the extent to which the plaintiff succeeded on her theory of liability—weighs heavily in favor of a full fee award.  As Plaintiff submits, the critical legal issue presented by this case, the appropriate standard governing an employer's vicarious liability, was by no means a settled legal issue when the litigation began.  Pl.'s Mem. in Supp. at 3-4, 7.  Although Plaintiff lost on that claim at her initial trial, Plaintiff's resolve in appealing the Court's instruction on vicarious liability allowed her to vindicate her right to hold EPI liable.

For Plaintiff, establishing EPI's liability in the first instance took two jury trials, two visits to the Tenth Circuit, and one to the Supreme Court.  The differences in how each court chose to resolve an employer's vicarious liability under Title VII speak to the issue's complexity.  Luckily for Plaintiff, she was aided along the way by experienced, dedicated counsel.  It would undermine the purpose of the private attorney general theory of fee shifting under Title VII to reduce the fee award simply because, as EPI maintains, Plaintiff did not win at each phase of the case.  *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring) (noting that 42 U.S.C. § 1988 "is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory").  To the contrary, Plaintiff pursued the case in the face of an uncertain legal theory, and although Plaintiff's legal journey occasioned adversity, her losses along the way fail to diminish in the slightest her final, successful pursuit of vicarious liability.  *Cf. Nephew v. City of Aurora, By and Through Mayor and City*

*Council*, 766 F.2d 1464, 1466 (10th Cir. 1985) (holding that "the approach set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), advances the general intendment of section 1988, providing incentives for *meritorious* civil rights litigation. It instructs a lawyer to critically evaluate the prospects for success in each potential civil rights claim, and it encourages the lawyer to proceed only with those claims that are indeed meritorious. The lawyer can go forward with difficult arguments, confident that the client's fee award will reflect the obstacles that the attorney overcomes.") (internal citation omitted) (emphasis in original).

Finally, Plaintiff argues that resolving the standard for vicarious liability under Title VII was an issue of significant public importance. Pl.'s Mem. in Supp. at 7-8. Interestingly, EPI does not refute that point, but rather bolsters it. EPI's brief states that the appeals in this case "resulted in a clarification of the law and the creation of a new legal standard of liability." Def.'s Mem. in Supp. at 3. Because the case turned on resolving a matter of substantial public importance, both for Plaintiff and the public at large, the Court finds that the third O'Connor factor also favors a full award of attorney's fees. In weighing the three factors, the Court does not find that the first neutral factor detracts from the other two that strongly favor a full award of fees. Therefore, a full award of reasonable fees will be granted.

EPI also argues that it would be inappropriate to award attorney's fees based on the time Plaintiff's attorneys spent on collecting the judgment rendered on her state law claims against Defendant Brown. The Court agrees. Therefore the Court will discount the time Plaintiff's attorneys have allotted to that endeavor. Accordingly, 15.8 hours will be subtracted from Richard Barish's billing statement, as will 0.8 hours from Floyd Wilson's billing statement. For the same reason, 7.4 hours will be deducted from the requested paralegal time.

9

Under the loadstar formula, the Court multiplies the hours reasonably spent on the litigation by a reasonable hourly rate. *Jane L. v. Vangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). EPI has not contested the reasonableness of the requested hourly rates. Letter from the Ct. to all counsel of December 27, 2001. After subtracting the time entries spent collecting the judgment against Defendant Brown, the Court calculates the attorney's fee awards against EPI as follows:

| Attorney | Hours | | Hourly Rate | | Fees |
|---|---|---|---|---|---|
| Floyd D. Wilson | 581.5 | X | $275 | = | $159,912.50 |
| Richard Barish | 537.5 | X | $200 | = | $107,500.00 |
| Barbara Pryor | 7.5 | X | $200 | = | $1,500.00 |
| Katherine Basham | 50.2 | X | $150 | = | $7,530.00 |
| Total Attorney's Fees | | | | | $276,442.50 |
| Paralegal | | | | | |
| Frances Buscema | 132.6 | X | $90 | = | $11,934.00 |

When combined, the attorney's and paralegal's fees for which EPI must reimburse Plaintiff amount to $288,376.50.

*Expenses*

Plaintiff seeks reimbursement of expenses which are not expressly addressed under the local rule covering litigation costs. D.N.M.LR-Civ 54.2. Plaintiff's expenses fall into the general

categories of witness fees, copy costs, postage, miscellaneous court filings, and reimbursement for her attorney's travel expenses incurred as part of the litigation. Pl.'s Application for Att'ys Fees & Expenses at 2-4. Because the requested expenses are of the type allowed under Fed. R. Civ. P. 54(d), *Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997) (permitting the award of "photocopying, milage, meals, and postage" as costs); *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (allowing the award of an attorney's travel expenses), and because EPI has not challenged the request in any fashion, the Court will award Plaintiff's requested expenses in the amount of $8,575.38.

IT IS THEREFORE ORDERED that Plaintiff's application for attorney's fees and expenses (Doc. No. 165) is GRANTED to the extent that Plaintiff will be awarded attorney's fee totaling $288,376.50, and expenses totaling $8,575.38.

_____
CHIEF UNITED STATES DISTRICT JUDGE